IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Global Consulting USA LLC d/b/a Paragon Risk Engineering<br><br>Plaintiff,<br><br>vs.<br><br>Pinnacle Risk Engineering, LLC, Duane Yost, Tiffany Hrycyna<br>Defendants. | Civil Action No.   2:24-cv-04919-DCN<br><br><br>**VERIFIED COMPLAINT** |

Plaintiff Global Consulting USA LLC d/b/a Paragon Risk Engineering (hereinafter "Paragon"), by and through its attorneys, brings this Complaint against Defendants Pinnacle Risk Engineering, LLC (hereinafter "Pinnacle"), Duane Yost ("Yost"), and Tiffany Hrycyna ("Hrycyna"). In support of this Complaint, Paragon alleges as follows:

**PARTIES AND JURISDICTION**

1.      Paragon is a New Jersey limited liability company that provides risk engineering services to clients throughout the world.  None of Paragon's members are citizens or residents of the State of South Carolina for diversity purposes.

2.      Defendant Pinnacle is a South Carolina limited liability company.   Upon information and belief, Pinnacle is a South Carolina citizen for diversity purposes.

3.      Defendant Yost is a former employee of Paragon residing at 1415 McPherson Landing, James Island, SC 29455.  Upon information and belief, Yost is a South Carolina citizen for diversity purposes.

4.      Defendant Hrycyna is a former employee of Paragon residing at 17 Cumberland Avenue, Greenville, SC 29607.  Upon information and belief, Hrycyna is a South Carolina citizen for diversity purposes.

5.      There is complete diversity between Plaintiff and Defendants, and the damages in this case exceed $75,000.00. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

6.      There is also federal question jurisdiction under 28 U.S.C. § 1331 pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

7.      The Court also has supplemental jurisdiction over any other claim under 28 U.S.C. § 1367.

8.      Venue is proper in this district under 28 U.S.C. § 1391 because one or more of Defendants reside in the Charleston County, South Carolina and a substantial part of the events or omissions giving rise to the claims occurred in Charleston County, South Carolina.

## FACTS

9.      Paragon provides risk engineering and consulting to clients located throughout the world.

10.      Defendant Yost was hired by Paragon on January 9, 2009, where he served as a Senior Consultant.

11.      Defendant Hrycyna was hired by Paragon on September 19, 2022, where she also served as a Senior Consultant.

12.      In early May 2024, Paragon's Operations Manager, Eric Smolan, needed to reach Yost while he was on PTO to field a customer inquiry for a file he was handling. Smolan had permission from Paragon and Yost to access to Yost's email while Yost was on PTO, so he checked

Yost's email to try and answer the customer inquiry. While doing that, he found correspondence between a Paragon client contact, Client-A Contact at Client A, and Yost dated May 13, 2024.[1]

13.    On May 13, 2024, Client A was a client of Paragon.

14.    On May 13, 2024, Client-A Contact was a Client A client contact for Paragon.

15.    On May 13, 2024, Yost was employed by Paragon.

16.    In this May 13, 2024 email to Yost, Client-A Contact attached a draft of a service contract for Yost to review between Client A and Pinnacle.

17.    As evidenced by this service contract, Yost had been soliciting Paragon clients for a new company, Pinnacle, while working and being paid by Paragon.

18.    As a direct result of this service contract between Client A and Pinnacle Engineering, Client A ceased sending Paragon any Referral Client 1 survey requests in the United States which, historically, Client A had ordered from Paragon.

19.    For example, in 2022, Paragon received 25 orders to perform Referral Client 1 surveys from Client A and in 2023, it received 35 Referral Client 1 survey orders from Client A.

20.    The loss of Referral Client 1 surveys in 2024 alone equals approximately $136,500 USD in lost fees to Paragon.

21.    Additionally, similar to the Referral Client 1 surveys, Client A also had historically ordered surveys from Paragon for Referral Client 2. For example, in 2023, Paragon received 20 survey orders for Referral Client 2 equaling approximately $78,000 in fees to Paragon. However, Paragon has not received any orders for Referral Client 2 from Client A in 2024.

---

[1] Because of the sensitive nature of the identities of Paragon's clients, their referrals, and the documents referenced in this Complaint, Paragon has anonymized all of its clients and redacted some documents. Upon docketing of this Complaint, Paragon intends to file a Motion to Seal these client identities and to serve a copy of a confidential identifying index solely for the purpose of allowing Defendants to respond to the Complaint.

22.     Upon learning that Yost was soliciting business from Client A for a new company, Smolan contacted Yost.  In that conversation:

    a.    Yost stated that he and two other Paragon employees, Defendant Hrycyna, and Nadine Binns, had been making plans to start a new company, Pinnacle; and

    b.    Yost stated that Pinnacle was intended to compete with Paragon.

23.     In an effort to mitigate its losses due to the loss of referrals from Client A, Paragon initially thought that perhaps Paragon could subcontract with the new company Yost, Hrycyna, and Binns were planning to start, and the two companies could work together rather than be competitors. With this idea, Rob McMullen, CEO of Paragon, had a discussion with Yost, Hrycyna, and Binns on May 31, 2024, and offered them this "off-ramp" which would permit the two companies to work together and would help Yost, Hrycyna, and Binns avoid liability for engaging in illegal business practices.

24.     That same day, however, Yost, Hrycyna, and Binns rejected the proposal from McMullen.

25.     Yost, Hrycyna, and Binns subsequently resigned their employment with Paragon on June 3, 2024.

26.     Articles of Organization for Pinnacle were filed with the South Carolina Secretary of State's office on March 12, 2024.

27.     As of March 12, 2024, Yost, Hrycyna, and Binn were all employees of Paragon.

28.     After the group had resigned, Paragon discovered more evidence that Yost and Hrycyna had been making plans for several months to form a competitive company while using Paragon's resources to do so and had also been soliciting Paragon's clients.

29.     On March 13, 2024, Yost received an email at his Paragon email address from an insurance broker, copying Hyrycyna and Binns, providing information needed to set up business insurance for Pinnacle.

30.     On March 29, 2024, Yost sent an email to Castlewise Insurance, on his Paragon email, copying Hrycyna and Binns, setting up insurance for Pinnacle.

31.     On May 4, 2024, Yost exchanged emails with an accountant, Jeremy Holmes, regarding information needed to set up Pinnacle using his Paragon email account.

32.     On June 3, 2024, the day Yost resigned, Yost received an email from Client-B Contact, an employee of Client B, on his Paragon email account. Client B is a very large Paragon client that Yost had worked with while at Paragon. This email, entitled "Pinnacle Site Visits" confirmed proposed dates for Yost and his new company, Pinnacle, to make upcoming site visits to Client B.

33.     These seven site visits and the accompanying surveys equate to over $150,000 in service fees that Paragon has lost to Defendants in 2024.

34.     On July 15, 2024, after his resignation from Paragon and while working for Pinnacle, Yost copied his Paragon employee email on correspondence with Client-B Contact-2 from Client B about scheduling a meeting regarding Chandon Dock.

35.     Paragon's IT department has discovered that on May 31, June 2, and June 3, 2024, leading up to his last day of employment, Yost downloaded from OneDrive and SharePoint the following proprietary and confidential Paragon technical guidance documentation:

     a.     Re-Survey Agenda.doc,

     b.     Survey Questionnaire.doc,

     c.     Roof Securement.docx,

d.      CP-EG-01-0012 Combustible External Wall Assemblies Fire Loss Histories SP_May_08_2024.pdf,

e.      CP-PM-04-0064 Loss Estimates Development-Schools SP_May_08_2024.pdf,

f.      CP-PM-04-0064 Loss Estimates Development - Schools SP_May_08_2024.pdf, CP-EG-01-0012 Combustible External Wall Assemblies Fire Loss History SP_May_08_2024.pdf,

g.      Roof Securement.docx,

h.      CP-EG-01-0012 Combustible External Wall Assemblies Fire Loss History SP_May_08_2024.pdf, and

i.      CP-PM-04-0064 Loss Estimates Development - Schools SP_May_08_2024.pdf.

j.      Paragon's IT department has also discovered that on May 31, June 2, and June 3, 2024, Yost downloaded from OneDrive and SharePoint the following proprietary and confidential Paragon pricing and client site information developed by Paragon for Client A:

k.      (Referral Client 2) Storage Reconfiguration Project Letter - Creedmoor, NC (dated 6-23-2023).doc,

l.      (Referral Client 2) North Carolina - Creedmoor 2 - 2024 Property Resurvey.docx,

m.      2024 Survey Report for (Referral Client 2)-Terre Haute IN.docx,

n.      (Referral Client 2) North Carolina - Creedmoor 2024 Repeat Property Survey.docx,

o.      2024 Survey Report for (Referral Client 2)-Terre Haute IN.docx,

36.    Paragon's IT department has also discovered that on May 31, June 2, and June 3, 2024, evidence that Yost downloaded from OneDrive and SharePoint the following proprietary and confidential Paragon pricing and client site information developed by Paragon for Client B:

a.      (Client B) OMD - Montreal QC - November 2023 COPE Report - FINAL.doc,

b.      2023 Draft COPE Report – (Referral Client 3) - (RSC) - East Bernstadt, KY.doc,

c.      2023 Recommendation Report - OMD - Montreal, QC (FINAL).docx,

d.      2023 COPE Report – (Referral Client 3) - (RSC) - East Bernstadt, KY (Draft).doc,

e.      2023 Recommendation Report - OMD - Montreal, QC (FINAL).docx, and

f.      2023 COPE Report – (Referral Client 3) - (RSC) - East Bernstadt, KY (Draft).doc.

37.    On June 2, 2024, Paragon's IT department discovered that Defendant Hrycyna downloaded from OneDrive the following proprietary and confidential Paragon technical guidance documentation: Barrel Storage Warehouse Maintenance Manual.doc.

38.    Paragon's IT department has also discovered that on June 2, June 3, and June 4, 2024, that Hrycyna downloaded from OneDrive and SharePoint the following proprietary and confidential Paragon pricing and client site information developed by Paragon for Client B:

a.      May Zero Cost Recommendation Review.pptx,

b.      (Client B) Zero-Cost Tracker.xlsx, D. Yost and T. (Client B) House - Valve List.xlsx,

  c.  Hrycyna Survey Fee.xlsx,

  d.  Property Risk Oracle Coding FINAL (3-31-24).xlsx,

  e.  May Zero Cost Recommendation Review.pptx, used for Oracle Work Stream 1 Spreadsheet (Revised 3-31-24).xlsx,

  f.  (Client B) Zero-Cost Tracker.xlsx, and

  g.  2022 Recommendation Report - FINAL - (Client B) (Referral Client 4) - Lewiston ME.docx.

39.  Paragon's IT department has also discovered that on June 2, June 3, and June 4, 2024, Hrycyna downloaded from OneDrive and SharePoint the following proprietary and confidential Paragon pricing and client site information developed by Paragon for various clients including Client C, Client D, and Client E:

  a.  Property Risk Assessment Report for (Client C) GSP1 FC - Spartanburg, SC.docx,

  b.  (Client F) Winston-Salem NC Dec 05 2022 Task No. 106754 External.docx,

  c.  (Client G) Lugoff SC March 7 2023 RES NG 108778 External Final.docx,

  d.  Property Risk Assessment Report for (Client C) GSP1 FC - Spartanburg, SC.docx,

  e.  (Client H) - Social Circle, GA CT Exterior Products (RS5941) - Industrial Report.docx, and

  f.  (Client H) - Social Circle, GA CT Exterior Products (RS5941) - Recommendation Report.docx.

40. Paragon takes reasonable precautions to protect the secrecy of many, if not all, of the documents set forth in paragraph 34–39, including, without limitation, restricting access to such information, internally designating such information as confidential when necessary, informing employees of the confidentiality of certain information, and requiring employee to abide by confidentiality obligations.

41. Many, if not all, of the documents set forth in paragraph 34–39 are Paragon's trade secrets because they are not readily ascertainable by proper means by those outside of Paragon and they provide Paragon with present and future independent economic value.

42. In Paragon's employee handbook, employees agree that they shall not, both during or after the termination of employment, divulge, communicate to any third party without permission, or make use for themselves or others any trade secrets and confidential information concerning Paragon, or any dealings, transactions or other information relating to Paragon or any customer for which an employee has come to know, received, or obtained information about by reason of their employment.

43. Confidential information includes the name and address of Paragon's customers and suppliers and details of Paragon's special processes.

44. The employee handbook also provides that during the period of employment, an employee may not undertake any work or other activity which may prejudicially affect their ability to discharge their duties and responsibilities or which conflicts with Paragon's business.

45. Defendants Yost and Hrycyna received a copy of Paragon's employee handbook.

46. Defendants Yost and Hrycyna knew, or should have known, of the provisions of Paragon's employee handbook set forth above.

47.     Defendants Yost and Hrycyna used and took Paragon's confidential information and trade secrets to set up their new company, Pinnacle, with the intention of soliciting Paragon's clients to compete with Paragon.

48.     This was done while Defendant Yost and Hrycyna were employed and being paid by Paragon and was a direct conflict of interest with their fiduciary duties to Paragon.

49.     Defendants Yost, Hrycyna, and Pinnacle after resigning from Paragon have continued to use Paragon's confidential information and trade secrets to illegally compete with Paragon.

50.     As a proximate cause of Defendants' acts and omissions, Paragon has been injured and damaged by the loss of clients.

51.     As a proximate cause of Defendants' acts and omissions, Paragon has also been irreparably harmed in the form of lost past, present, and future revenues, lost business goodwill, and other injuries to be established at trial.

52.     As a proximate cause of Defendants' acts and omissions, Paragon has incurred, and will continue to incur, attorneys' fees and costs.

**FOR A FIRST CAUSE OF ACTION**
Breach of Contract
(Against Yost and Hrycyna)

53.     Paragon repeats and realleges the foregoing allegations as if repeated herein verbatim.

54.     Defendant Yost and Hrycyna had a valid contract with Paragon, as evidenced in the Employee Handbook, to keep Paragon's confidential information secret and not to use if for their own purposes.

55.     While employed by Paragon and after their employment ended, Yost and Hrycyna have taken and used for their purposes and the purposes of Pinnacle, confidential information and trade secrets belonging to Paragon in violation of the provision in the handbook and while employed with Paragon, acted in contravention to their fiduciary duties to Paragon.

56.     This constitutes a breach by Yost and Hrycyna of their contract with Paragon.

57.     Yost and Hrycyna's breach of their contract with Paragon has proximately caused Paragon monetary damages and irreparable harm in the particulars set forth above.

**FOR SECOND CAUSE OF ACTION**
Violation of the South Carolina Trade Secrets Act, S.C. Code §§ 39-8-10, *et seq*.
(Against All Defendants)

58.     Paragon repeats and realleges the foregoing allegations as if repeated herein verbatim.

59.     Paragon's trade secrets have independent economic value and are not generally known to or readily ascertainable by persons outside of Paragon. These trade secrets provide Paragon with an economic and competitive advantage in the marketplace.

60.     Paragon has expended substantial financial resources to develop its trade secrets, which cannot be easily acquired or duplicated by others.

61.     Paragon takes reasonable precautions to protect the secrecy of its trade secrets, including restricting access to such information, internally designating such information as confidential when necessary, informing employees of the confidentiality of certain information, and requiring employee to abide by confidentiality obligations.

62.     Paragon's confidential and proprietary information are trade secrets within the definition of the Act.

63.     Defendants have misappropriated Paragon's trade secrets while knowing, or having reason to know, they were acquiring information through improper means, including customer contact information, pricing information, processes, and contract information.

64.     Defendants misappropriated Paragon's trade secrets when they used such information to benefit themselves, without Paragon's consent.

65.     Defendants knew or should have known that their acquisition and/or use of Paragon's trade secrets was improper, unauthorized, and illegal, and their misappropriation has been willful and malicious.

66.     Defendants' misappropriation of Paragon's trade secrets has caused and will continue to cause Paragon irreparable harm, including, but not limited to, lost profits and loss of customer relationships and good will.

67.     As a direct result of Defendants' misappropriation of its trade secrets, Paragon has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law and Paragon is entitled to injunctive relief to prevent this continuing harm as well as damages in the particulars set forth above.

**FOR A THIRD CAUSE OF ACTION**
Tortious Interference with Contractual Relations
(Against All Defendants)

68.     Paragon repeats and realleges the foregoing allegations as if repeated herein verbatim.

69.     Defendants have used Paragon's confidential and proprietary information and trade secrets to tortiously interfere with Paragon's relationship with its customers to encourage them to cease doing business with Paragon and to attempt to induce its customers to do business with Defendants.

70.    Paragon has ongoing contractual relationships with its customers.

71.    Defendants have knowledge of Paragon's contractual relationship with its customers, including contact information and pricing.

72.    Defendants have improperly and intentionally interfered with Paragon's past, present, and future relationships with its customers.

73.    Defendants lack any justification, including but not limited to justification based on legitimate business competition, for this interference.

74.    As a direct and proximate result of Defendants' intentional interference with Paragon's customer relationships, Paragon has suffered, and will continue to suffer, irreparable harm for which it has no adequate remedy at law and therefore Paragon is entitled to injunctive relief to prevent this continuing harm as well as damages as will be determined by the Court.

75.    Defendants' actions proximately caused damages to Paragon in the particulars set forth above.

**FOR A FOURTH CAUSE OF ACTION**
Conversion
(Against All Defendants)

76.    Paragon repeats and realleges the foregoing allegations as if repeated herein verbatim.

77.    By virtue of Defendants' misappropriation and theft of Paragon's confidential and trade secret information, Defendants knowingly, intentionally, and impermissibly exercised control over Paragon's confidential and trade secret information and interfered with Paragon's superior and exclusive right of possession and property interest in its confidential and trade secret information.

78.     Despite Defendants' contractual and common law obligations, Defendants have failed to return Paragon's confidential and trade secret information upon their separation from Paragon employment.

79.     By virtue of their foregoing conduct, Defendants have knowingly, intentionally, and wrongfully converted Paragon's confidential and trade secret information for their own use and benefit or the use and benefit of others.

80.     Through Defendants' conduct, Paragon has sustained irreparable injury and, unless Defendants are enjoined, Paragon will continue to suffer irreparable injury, including, without limitation, the losses caused by Defendants' misappropriation of Paragon's confidential information and the use thereof while now working with a competitor. Paragon has suffered and continues to suffer, immediate, irreparable, and unquantifiable damages.

## FOR A FIFTH CAUSE OF ACTION
Breach of Duty of Loyalty
(Against Yost and Hrycyna)

81.     Paragon repeats and realleges the foregoing allegations as if repeated herein verbatim.

82.     At all times during their employment with Paragon, Defendants Yost and Hrycyna owed a duty of loyalty to Paragon and were obligated to act in the best interests of Paragon and not to engage in any conduct that might subvert its best interests.

83.     Defendants Yost and Hrycyna have breached their respective duties of loyalty by engaging in the concerted course of wrongful and tortious conduct described in the preceding allegations.

84.     As a result of Defendants Yost's and Hrycyna's breached of their duties of loyalty, Paragon has sustained losses caused by their misappropriation of Paragon's confidential

14

information and trade secrets and the use thereof, while working to advancing the interests of their new company, Pinnacle, a direct competitor of Paragon, causing Paragon's loss of goodwill, competitive position, revenues, and profits.

85.    Defendants' actions proximately caused damages to Paragon in the particulars set forth above.

### FOR A SIXTH CAUSE OF ACTION
Civil Conspiracy
(Against All Defendants)

86.    Paragon repeats and realleges the foregoing allegations as if repeated herein verbatim.

87.    Defendants have acted in concert with each other in furtherance of the wrongful and tortious conduct alleged in the preceding counts of this Complaint and as described in the common factual allegations asserted in this Complaint.

88.    Defendants entered into an express or implied agreement to commit the wrong set forth above as evidenced by, among other things, their formation of Pinnacle to compete with Paragon.

89.    As a result of the wrongful and tortious conduct pursued in furtherance of the common goals of the conspiracy, Paragon has sustained irreparable injury and unless Defendants are enjoined, Paragon will continue to suffer irreparable injury, including, without limitation, the losses caused by their misappropriation of Paragon's confidential information and trade secrets and the use thereof while now working to advance the interests of a Paragon competitor, Pinnacle.

90.    Each Defendant is jointly and severally liable with the others as co-conspirators.

91.     Defendants have intentionally and willfully engaged in wrongful and tortious conduct designed to inflict harm upon Paragon, and have acted in an extreme and outrageous manner, as described in detail in the preceding allegations of the Complaint.

92.     Defendants' actions proximately caused damages to Paragon in the particulars set forth above.

93.     Defendants' actions also proximately caused measurable economic losses that result from Defendants' conduct in the form of losing current and prospective clients, and harm to Paragon's reputation.

### FOR A SEVENTH CAUSE OF ACTION
Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.
(Against All Defendants)

94.     Paragon repeats and realleges the foregoing allegations as if repeated herein verbatim.

95.     Paragon's proprietary and confidential technology, strategies, and initiatives, including, without limitation, its plans, strategies, company lists, internal reports, initiatives, customer lists, use of technology, and other proprietary methodologies constitute protectable trade secrets within the meaning of the Defend Trade Secrets Act.

96.     Paragon committed significant resources to acquire this confidential and proprietary trade secret information, which is not readily ascertainable through proper means.

97.     Paragon derives economic value from the secrecy of its customer information, use or technology, and its other business processes, and by the lack of access to this information by Paragon's competitors. Paragon's operational know-how and clientele, contained in its trade secrets, have and will continue to position Paragon ahead of its competitors. Paragon expects to continue to derive further value from its technology and initiatives.

98.    Paragon took reasonable steps to protect these trade secrets including, without limitation, an employee confidentiality policy for all employees.

99.    Paragon did not consent to the misappropriation of its trade secrets.

100.    The trade secrets that Defendants took from Paragon are integral to Paragon's competitive advantage in the marketplace, and if the information becomes generally known to Paragon's competitors, Paragon stands to suffer irreparable harm.

101.    Defendants have used Paragon's trade secrets in interstate commerce.

102.    As evidenced in the factual allegations above, Defendants have taken and used Paragon's trade secrets for their own advance and therefore have competed unfairly against Paragon by benefiting from the resources Paragon invested in its processes and initiatives.

103.    Defendants knew, or should have known, the information intentionally taken from Paragon constituted trade secrets, and that information was improperly and/or illegally taken from Paragon or derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret.

104.    Paragon has been harmed and will continue to be irreparably injured by Defendants violations of this statute unless and until this Court enters a preliminary and permanent injunction, enjoining and restraining Defendants from participating in this misappropriation of Paragon's trade secrets.

105.    Equity favors granting injunctive relief to Paragon based on the verified facts.

106.    Defendants' actions proximately caused damages to Paragon in the particulars set forth above.

107.    No safe harbor or exception applies to Defendants' conduct.

## **FOR AN EIGHTH CAUSE OF ACTION**

Violation of the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-10, *et seq*.
(Against All Defendants)

108.    Paragon repeats and realleges the foregoing allegations as if repeated herein verbatim.

109.    Defendants' actions as described in the paragraphs above were unfair and deceptive and violation of the South Carolina Unfair Trade Practices Act.

110.    Defendants' acts were committed in the conduct of their trade and commerce on behalf of Pinnacle.

111.    Defendants' deceptive and unfair acts affect the public interest in that they have the potential for repetition.  Paragon anticipated future business from its customers based, at least in part, on the use of its trade secrets misappropriated by Defendants.

112.    Defendants knew or should have known that Paragon would have completed additional sales or provided additional services to its customers but for Defendants'; conduct.

113.    Defendants' deceptive and unfair acts implicated commercial interests broader than the private dispute between the parties because of the involvement of other third-party customers of Paragon who were engaged in business with Paragon.

114.    Defendants' unfair and deceptive actions were intentional and willful.

115.    Defendants' unfair and deceptive actions proximately cause Paragon actual damages in the particulars set forth above.

116.    The public interest favors the entry of any injunction to protect Paragon during the course of this litigation.

**FOR A NINTH CAUSE OF ACTION**
Unjust Enrichment
(Against All Defendants)

117.     Paragon repeats and realleges the foregoing allegations as if repeated herein verbatim.

118.     Paragon devoted considerable effort and resources to develop its confidential, proprietary information and trade secrets, including its customers, processes, forms, analyses, and initiatives.

119.     Defendants have derived and will continue to derive substantial benefits from their theft and use of Paragon's confidential and proprietary information and trade secrets and will unjustly benefit from Paragon's substantial investment of time, money, and resources.

120.     Defendants' unjust appropriation of Paragon's efforts and investments is a benefit to Defendants.

121.     Defendants have knowingly accepted and retained the benefits of its unjust appropriation of Paragon's investment and efforts.

122.     Defendants have provided nothing of value to Paragon in connection with or in return for its unjust use and benefit of Paragon's efforts and investment.

123.     The circumstances are such that it would be inequitable and unjust for Defendant to retain the benefits it has unjustly accepted and retained at Paragon's expense without paying the value thereof to Paragon.

**PRAYER FOR RELIEF**

WHEREFORE, Paragon prays that the Court:

a.  enter judgment in its favor and against Defendants,

b.  grant Paragon preliminary and permanent injunctive relief,

c.  award Paragon compensatory, incidental, consequential, punitive, and liquidated damages;

d.  award Paragon its attorneys' fees and costs;

e.  grant such other and further relief the Court deems just and proper.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: *s/ Debbie Whittle Durban*
    Debbie Whittle Durban
    Fed. ID No. 7391
    Matthew A. Abee
    Fed. ID No. 11747
    Connor T. Jasso
    Fed. Bar No. 13913
    1320 Main Street, 17th Floor
    Columbia, South Carolina 29201
    (803) 799-2000
    Debbie.durban@nelsonmullins.com
    Matt.abee@nelsonmullins.com
    Connor.jasso@nelsonmullins.com

*Attorneys for Global Consulting USA d/b/a Paragon Risk Engineering*

September 9, 2024
Columbia, South Carolina

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| | ) | Civil Action No. |
| | ) | |
| Global Consulting USA LLC d/b/a Paragon Risk Engineering | ) | |
| | ) | |
| | ) | **VERIFICATION OF COMPLAINT** |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| Pinnacle Risk Engineering, LLC, Duane Yost, Tiffany Hrycyna | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PERSONALLY appeared before me the undersigned, who being first duly sworn, deposes and says: My name is Robert McMullen and I am the President of Global Consulting USA LLC. I have read the VERIFIED COMPLAINT attached hereto. I know that the matters and things stated therein are true to the best of my knowledge, except those matters and thing therein stated on information and belief, and as to those, I believe them to be true.

*Robert mcmullen*
_____

Robert McMullen

September 6, 2024
_____

Date